The Honorable Randy Laverty State Senator Post Office Box 303 Jasper, AR 72641-0303
Dear Senator Laverty:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
In light of the provisions of Act 1452 of 2005, as codified at A.C.A. §6-20-604, can the Department of Education legally continue to send isolated school funds to school districts based on prior-year average daily membership figures even if the school in question has been completely or partly closed?
RESPONSE
In my opinion, the answer to this question is "no" if the isolated school has been closed; "no" for the year in which an isolated school has been partially closed; and "yes" for any year subsequent to the year in which an isolated school has been partially closed.
Section 6-20-601 of the Arkansas Code (Supp. 2003), as amended by Acts 2005, No. 1397, defines an "isolated school" as one that meets various recited criteria that establish it as "isolated" and hence qualify it for the receipt of additional state funding. Subsection 6-20-603(b) (West Supp. 2005) provides:
 Beginning with the 2004-2005 school year and each school year thereafter, state financial aid in the form of isolated funding shall be provided to school districts containing an isolated school area in an amount equal to the prior year three (3) quarter average daily membership of the isolated school area multiplied by the per student isolated funding amount for the isolated school areas as set forth under column "C" of subsection (a) of this section.
(Emphasis added.) As reflected in the highlighted passage above, the award of financial aid to an isolated school under this formula in any given year is based upon the average daily membership in the school area in the preceding year.
Act 1452 of 2005 added to the Code a new § 6-20-604, which provides for "special needs funding" for qualifying former isolated school districts that were consolidated or annexed pursuant to Acts 2003, No. 60 (2nd
Ex. Sess.).[1] As you note in your request, § 1 of Act 1452 added as A.C.A. § 6-20-604(h) the following provisions:
 (1) A school district eligible to receive isolated funding under § 6-20-603 shall continue to receive partial funding under § 6-20-603
even if part of the isolated schools are closed, but a school district shall not receive funding under § 6-20-603 for any isolated schools or parts thereof that have been closed by the local board of directors.
 (2) If part of the isolated schools in a district are closed, the school district shall receive funding under § 6-20-603 based on the three-quarter average daily membership of the isolated schools or parts thereof that remain open in the district.
(Emphases added.)
I believe it is apparent on the face of A.C.A. § 6-20-604(h)(1) that a school district that completely closes an isolated school will receive no additional funds for that school. With respect to computations made to determine funding during the year in which an isolated school is partially closed, I do not believe the highlighted sections of the just recited A.C.A. § 6-20-604(h) can be reconciled with the highlighted section of A.C.A. § 6-20-603(b) quoted above. It can neither be reconciled with A.C.A. § 6-20-2305(a)(2), as amended by Acts 2005, No. 2283, § 2, which defines the "foundation amount" for the upcoming school years as stated sums "multiplied by the average daily membership of theprevious school year" (Emphasis added). Section 6-20-604(h) is absolutely unambiguous in declaring that for isolated schools that have been closed or partially closed following an annexation or consolidation, funding pursuant to A.C.A. § 6-20-603 will be based upon the average daily membership of the "parts thereof that remain open" — a present-tense formulation that is flatly inconsistent with the proposition that funding might be based on the average daily membership of the isolated school in the year prior to its closing or partial closing. In the year of a school's partial closure, then, this statute strongly and quite logically implies that the average daily membership figures upon which funding will be based must reflect the student population in that particular year.Compare Acts 2005, No. 2283, § 2, to be codified as A.C.A. §6-20-2305(b)(4)(B)(ii)(a) (providing that if a school district has experienced significant growth in enrollment in the previous three years, the expected increase in enrollment for the upcoming year will be factored in for purposes of determining national school lunch payments).
By contrast, in the period following the first year of an isolated school's partial closure, I believe officials could apply the terms of A.C.A. § 6-20-603(b) without violating the current-year provisions of A.C.A. § 6-20-604(h)(2). I offer this opinion because even if officials used prior-year figures to compute funding in these subsequent years, the computation would nevertheless be based upon "the isolated schools or parts thereof that remain open in the district," thereby rendering the formulation consistent with A.C.A. § 6-20-604(h)(2). The same would not hold true if one used pre-closure data to compute post-closure revenues in the first year the school was partially closed. There would consequently be no reason not to apply the formula set forth at A.C.A. §6-20-603(b) in years following the first year of the partial closure.
I am struck by the fact that the legislature, in addressing isolated schools that have not been fully or partially closed, has accepted prior-year average daily membership figures as a sufficient approximation of current-year figures. My inquiries suggest that the legislature's acceptance of these prior-year figures under such circumstances is designed to minimize accounting difficulties and to ensure that pertinent data will be available in timely fashion to ensure prompt funding to the isolated district. By contrast, in dictating the applicable formula to compute funding following the partial closure of an isolated school, the legislature has declined to adopt a fiction that the partial closure never occurred.
In determining how to address the tension between A.C.A. § 6-20-603(b) and A.C.A. § 6-20-604(h) when considering funding during the year of a partial school closure, I am guided by several principles of statutory construction. First, a general statute normally does not apply where there is a specific statute governing a particular subject matter. Donohov. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho, 318 Ark. 637; Ward School Bus Mfg., Inc. v.Fowler, 261 Ark. 100, 547 S.W.2d 394 (1977). However, repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly. Uilkie v. State,309 Ark. 48, 827 S.W.2d 131(1992); Love v. Hill, 297 Ark. 96, 759 S.W.2d 550
(1988). Finally, ordinarily the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. Cityof Fort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980).
In the present case, A.C.A. § 6-20-604(h) is the more particular legislation in that it specifically addresses the funding of isolated schools that have been partially closed, whereas A.C.A. § 6-20-603(b) only generally addresses the funding of isolated schools and A.C.A. §6-20-2305(a)(2) even more generally addresses only the standard formula used to compute foundation funding in any district. Morever, A.C.A. §6-20-604(h), which was enacted pursuant to Act 1452 of 2005, marks a later expression of legislative will than A.C.A. § 6-20-603(b), which was enacted pursuant to § 1 of Act 65 of 2003 (2nd Ex. Sess.). Accordingly, applying the above principles of construction, I believe the provisions of A.C.A. § 6-20-604(h) should control over those of A.C.A. §6-20-603(b). With respect to the tension between A.C.A. § 6-20-603(b) and A.C.A. § 6-20-2305(a)(2), I appreciate that the latter statute was amended later in the 2005 legislative session than A.C.A. § 6-20-604 was enacted. However, given the fact that A.C.A. § 6-20-604(h) addresses with far greater specificity the treatment of isolated schools that have been completely or partially closed, I think the terms of this statute should control over the general formula set forth at A.C.A. § 6-20-2305(a)(2).
To summarize, then, if an isolated school is completely closed, the district will have no current-year average daily membership and should receive no isolated school funding based upon the closed schools prior-year average daily membership. With respect to a partial closure,during the year that the partial closure takes effect, I do not believe it would be appropriate for the Department of Education to fund the partially closed isolated school based upon a formula that incorporates prior-year average daily membership figures. However, in the first yearfollowing a partial closure and on an ongoing basis thereafter, I believe officials can and should apply the prior-year figures mandated by A.C.A. § 6-20-603(b). I appreciate that there might be some difficulty in obtaining current-year figures that would permit funding a partially closed isolated school in timely fashion. However, I cannot ignore what I take to be the plain meaning of the pertinent statute. In my opinion, any difficulties arising from the statute should be addressed by the legislature.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Act 60 mandated the annexation or consolidation of school districts having an average daily membership of 350 or fewer students.